# UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| IN RE:<br><br>Infinity Business Group, Inc.,<br><br>       Debtor. | **Bankruptcy Case No. 10:06335-jw** |
| Robert F. Anderson, as Chapter 7<br>TRUSTEE FOR INFINITY BUSINESS<br>GROUP, INC.,<br><br>       Plaintiff,<br><br>vs.<br><br>WADE CORDELL, O. BRADSHAW CORDELL, CORDELL, LLC, THE CORDELL GROUP, LLC, GIBSON COMMONS, LLC, BRYON K. STURGILL, STURGILL & ASSOCIATES, INC., JOHN F. BLEVINS, LAW OFFICES OF JOHN F. BLEVINS, LLC, GOLDEN GHOST, INC., HAINES H. HARGRETT, DONALD BRENT GRAFTON, D. LARRY GRAFTON, GRAFTON & COMPANY, PLLC, MORGAN KEEGAN & COMPANY, INC., and KEITH E. MEYERS,<br><br>       Defendants. | **Adv. Proc. No. 12-80208-jw**<br><br><br><br>**ORDER DENYING MOTION TO DISMISS FILED BY DEFENDANTS WADE CORDELL, BRADSHAW CORDELL, CORDELL, LLC, THE CORDELL GROUP, LLC, AND GIBSON COMMONS, LLC** |

      This matter comes before the Court upon the Motion to Dismiss ("Motion"), filed by Defendants Wade Cordell; Bradshaw Cordell; Cordell, LLC; The Cordell Group, LLC; and Gibson Commons, LLC (collectively, "Defendants") on May 1, 2013. Plaintiff, Robert F. Anderson, Chapter 7 Trustee ("Trustee") of the estate ("Estate") of Infinity Business Group, Inc. ("Debtor") filed an Objection to the Motion to Dismiss ("Objection"). Following a hearing on the Motion, the Court makes the following findings of fact and conclusions of law pursuant to Fed. R. Civ. P. 52, which is made applicable to this proceeding by Fed. R. Bankr. P. 7052.

1

**FINDINGS OF FACT**

1. On August 17, 2009, Wade Cordell (the then-company president and board member), Brad Cordell (the then-company chief operating officer and board member), and John Blevins (the then-corporate counsel and board member) were notified of their removal from the Board of Directors of the Debtor and of the termination of their employment contracts.

2. On August 18, 2009, Wade Cordell, Brad Cordell, and John Blevins ("Cordell Group") filed suit against Bryon Sturgill, Paul Newberry, James Beasley, Haines Hagrett, Michael Lambert, and Jeffrey Lyle ("Sturgill Group") in the Court of Common Pleas in the County of Lexington, South Carolina ("Lexington County Action") while also moving for a Temporary Restraining Order against Sturgill Group. The Cordell Group claimed that the Sturgill Group had improperly terminated their employment contracts without providing them notice of the meeting at which such termination was approved.

3. On August 20, 2009, the Sturgill Group filed a complaint on behalf of the Debtor in the Commonwealth of Kentucky Circuit Court against the Cordell Group ("Kentucky Suit").

4. The Sturgill Group on behalf of the Debtor also moved for an Ex-Parte Restraining Order ("Kentucky TRO Motion") against the Cordell Group, their agents, servants and employees to prevent them from doing any of the following acts: obtaining possession of, hiding, transferring or otherwise disposing of any assets of the Debtor, including but not limited to financial accounts and deposits; taking any action on behalf of the Debtor, including, but not limited to executing any document on behalf of the corporation; contacting, and/or threatening any employee of IBG; coming about the Debtor's Kentucky facility; contacting, directly or indirectly, orally or in writing or by any form of electronic transmission any customer, financial institution, vendor, or any other business associate of the Debtor in an attempt to obtain

information related to the Debtor's business and/or damage the Debtor's business operations; and accessing any business records or other assets or records of assets of the Debtor.

5. On August 20, 2009, the Kentucky TRO Motion was granted ex parte.

6. On September 2, 2009, the Sturgill Group entered into a "Compromise and Settlement Agreement" ("2009 Settlement Agreement") with the Cordell Group and others to resolve the Lexington County Action and Kentucky Suit. The 2009 Settlement Agreement included the following release: In consideration of the full and complete satisfaction of the terms of this Agreement, the Defendants and the Company do hereby, release and forever discharge Wade B. Cordell, Bradshaw O. Cordell, and John F. Blevins, from any and all claims, demands, debts, liabilities, obligations, contracts, agreements, causes of action, suits and costs, of whatever nature, character or description, whether known or unknown, suspected or unsuspected, anticipated or unanticipated, which Defendants or the Company may have had, may have, or may hereafter have or claim to have against Wade B. Cordell, Bradshaw O. Cordell, and John F. Blevins through September 2, 2009 ("2009 Settlement Agreement Release").

7. On October 6, 2009, the 2009 Settlement Agreement was presented to the Court of Common Pleas in the County of Lexington, South Carolina ("Lexington Court") and was incorporated into a Consent Order and Stay ("State Court Judgment"), which confirmed and approved the 2009 Settlement Agreement, entered on October 30, 2009.

8. On February 15, 2011, the Trustee filed a Motion to Set Aside Settlement ("60(b) Motion"), which sought to set aside the 2009 Settlement Agreement pursuant to S.C.R. Civ. P. 60(b)(5) on the grounds that it was "no longer equitable that the judgment should have prospective application" and it would be "inequitable to allow the [2009 Settlement Agreement] to remain in place." The 60(b) Motion further argued that the "Debtor received nothing in return

or in consideration for the [2009 Settlement Agreement]." The 60(b) Motion asserted that the 2009 Settlement Agreement was invalid because the Debtor was not represented by counsel and could not appear *pro se* before the Lexington Court.

9. On June 9, 2011, the Lexington Court entered the Order Denying Petitioner's Motion to Set Aside Settlement ("60(b) Order"), which denied the 60(b) Motion. The Lexington Court first recognized that on the face of the 60(b) Motion, the Trustee had only moved pursuant to S.C.R. Civ. P. 60(b)(5) to set aside the 2009 Settlement Agreement, which would require the Trustee to establish that it was no longer equitable to allow the State Court Judgment to have prospective application, which was not warranted. The Lexington Court continued that "[a]lthough the Trustee filed [the 60(b) Motion] citing Rule 60(b)(5), during the course of the hearing on this matter, arguments were raised pursuant to Rules 60(b)(1)-(3) of the South Carolina Rules of Civil Procedure. To the extent the Trustee's [60(b) Motion] seeks relief pursuant to Rules 60(b)(1)-(3), the Court finds that any motion under these motions is untimely."

10. The Causes of Action in the Complaint naming Defendants are the following causes of action: 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 14, 15, 20, 21, 22, 23, 26, 32, 34, and 35 (collectively, "Causes of Action").

11. The Trustee alleges in the Complaint that the Debtor failed to receive reasonably equivalent value in exchange for the transfers of its rights and property pursuant to the 2009 Settlement Agreement and 2009 Settlement Agreement Release and that in approving the 2009 Settlement Agreement, the Lexington Court made no determination as to whether the values on each side of the transaction between the Debtor, the Sturgill Group, and the Cordell Group were equal and did not make a determination as to the value of the 2009 Settlement Agreement between the Debtor and the Cordell Group.

4

**CONCLUSIONS OF LAW**

Defendants seek dismissal of the Trustee's Causes of Action against them on the grounds that the *Rooker-Feldman* doctrine divests this Court of jurisdiction to consider those claims since the Trustee is in essence seeking review by this Court of the State Court Judgment and 60(b) Order. In response, the Trustee argues that the *Rooker-Feldman* doctrine does not apply because (1) the Causes of Action are independent claims from those addressed by the State Court Judgment and 60(b) Order, and (2) he neither complains of injuries caused by, nor invites this Court to review and reject, the State Court Judgment and 60(b) Order.

**I.**   *Rooker-Feldman* **Doctrine**

"The *Rooker-Feldman* doctrine bars lower federal courts from undertaking appellate review of state court decisions." McGuffin v. Barman (In re BHB Enterprises, LLC), C/A No. 97-01975-JW, Adv. Pro. No. 97-80201, 1997 WL 33344249 (Bankr. D.S.C. Aug. 27, 1997) (citing District of Columbia Court of Appeals v. Feldman, 460 U.S. 462 (1983)); Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923)). The *Rooker-Feldman* Doctrine is a jurisdictional doctrine, and is different from the preclusion doctrines of *res judicata* and collateral estoppel. See Lance v. Dennis, 546 U.S. 459, 466, 126 S. Ct. 1198, 1202, 163 L.Ed.2d 1059 (2006); GASH Assocs. v. Village of Rosemont, Ill., 995 F.2d 726, 728 (7th Cir. 1993) (2006) (stating that the *Rooker-Feldman* doctrine and preclusion principles are not coextensive). The application of the *Rooker-Feldman* doctrine must be determined before considering *res judicata*. See Centres, Inc. v. Town of Brookfield, Wisc., 148 F.3d 699, 703 (7th Cir. 1998).

The following requirements must be met for the *Rooker-Feldman* doctrine to apply: (1) the federal plaintiff lost in state court; (2) the plaintiff complains of injuries caused by the state-court judgments; (3) those judgments were rendered before the federal suit was filed; and

5

(4) the plaintiff is inviting the district court to review and reject the state-court judgments. <u>Exxon Mobile v. Saudi Basic Industries Corporation Exxon Mobile</u>, 544 U.S. 280, 284, 125 S. Ct. 1517, 1521–22, 161 L.Ed.2d 454 (2005); <u>see</u> <u>also</u> <u>Great Western Mining & Mineral Co. v. Fox Rothschild, LLP</u>, 615 F.3d 159, 166 (3d Cir. 2010) (noting that the second and fourth requirements are the key to determining whether a federal suit presents an independent, non-barred claim). If applicable, the federal court lacks subject matter jurisdiction over the federal plaintiff's claims and the claims must be dismissed. See <u>Feldman</u>, 460 U.S. at 476; <u>Rooker</u>, 263 U.S. at 416.

In <u>Exxon</u>, the Supreme Court clarified that the *Rooker-Feldman* doctrine is a narrow doctrine.[1] 125 S. Ct. at 1521-22. As explained by the Fourth Circuit following the issuance of the Supreme Court's <u>Exxon</u> decision, the "*Rooker-Feldman* doctrine applies only when the loser in state court files suit in federal district court seeking redress for an injury caused by the state court's decision itself." <u>Davani v. Virginia Dept. of Transp</u>., 434 F.3d 712, 713 (4th Cir. 2006). If the state court loser is not challenging the state-court judgment, the doctrine does not apply. <u>Id.</u> at 719. Furthermore, a federal court is not divested of subject matter jurisdiction under the *Rooker-Feldman* doctrine simply because a federal plaintiff attempts to litigate in federal court a matter previously litigated in state court. <u>Exxon</u>, at 1527. "If a federal plaintiff presents some independent claim, albeit one that denies a legal conclusion that a state court has reached in a

---

[1] Prior to Exxon, the Fourth Circuit had interpreted the *Rooker-Feldman* doctrine broadly to provide that the loser in a state court adjudication was barred from bringing suit in federal court alleging the same claim or a claim that could have been brought in the state proceedings. <u>Davani v. Virginia Dept. of Transp</u>. 434 F.3d 712, 714 (4th Cir. 2006) (explaining the history of its interpretation of the doctrine). This broad interpretation arose out of the interpretation of the "inextricably interwined" language contained in a footnote in the <u>Feldman</u> case. See <u>Feldman</u>, 103 S.Ct. at 1303 n. 16 (stating that "if the constitutional claims presented to [the district court] are inextricably intertwined with the state court's [ruling] in a judicial proceeding ..., then the district court is in essence being called upon to review the state court decision."). The Fourth Circuit has explained that following <u>Exxon</u>, Feldman's "inextricably intertwined" language does not create an additional legal test for determining when claims challenging a state-court decision are barred, but merely states a conclusion: if the state-court loser seeks redress in the federal district court for the injury caused by the state-court decision, his federal claim is, by definition, "inextricably intertwined" with the state-court decision, and is therefore outside of the jurisdiction of the federal district court. <u>Davani</u>. 434 F.3d at 719.

case to which he was a party..., then there is jurisdiction and state law determines whether the defendant prevails under principles of preclusion." Id. Notably, the *Rooker-Feldman* doctrine does not apply when a federal statute specifically authorizes a lower federal court to set aside a state court judgment. In re Martyak, 432 B.R. 25, 30 (Bankr. N.D.N.Y. 2010) (citing Hopkins v. Foothill Mt., Inc. (In re Hopkins), 346 B.R. 294, 302 (Bankr. E.D.N.Y. 2006) (collecting cases)).

**II. Application of *Rooker-Feldman* Doctrine to this Adversary Proceeding**

*a. The Rooker-Feldman Doctrine does not apply because the Trustee alleges independent federal claims.*

The Trustee first argues that in determining the merits of the Causes of Action and specifically those seeking to avoid the transfers made pursuant to the 2009 Settlement Agreement, the Court will not have to decide that the State Court Judgment or 60(b) Order was erroneous or even consider the determinations underlying the State Court Judgment or 60(b) Order because the Causes of Action are separate and independent claims, which exist wholly apart from the State Court Judgment and 60(b) Order. See e.g., McGuffin v. Barman, 1997 WL 33344249, at *7. Specifically, the Trustee argues that the transfers made pursuant to the 2009 Settlement Agreement, including the rights given up in the 2009 Settlement Agreement Release, constituted fraudulent transfers under 11 U.S.C. § 548[2] and § 544(b) in conjunction with S.C. Code Ann. § 27-23-10 and preferences under § 547. See e.g., In re Miller, No. 09-15324-FJB, 2009 WL 3398716, at *4 (Bankr. D. Mass. Oct. 16, 2009) (finding that *Rooker-Feldman* did not apply to a fraudulent transfer claim where the debtor sought to avoid her agreement to entry of a judgment in state court which dismissed certain state law claims against a former boyfriend with prejudice based on her assertion that the agreement was entered into under duress); In re Martyak, 432 B.R. 25, 31 (Bankr. N.D.N.Y. 2010)(stating that "[t]he bankruptcy avoidance

---

[2] Further references to the Bankruptcy Code shall be by section number only.

7

provisions represent specific bankruptcy legislation permitting federal courts to set aside state court judgments under certain circumstances...."). The Trustee asserts that these Causes of Action would be identical notwithstanding entry of the State Court Judgment and 60(b) Order. See Bolden, 441 F.3d at 1145 ("Rooker–Feldman does not bar federal-court claims that would be identical even had there been no state-court judgment; that is, claims that do not rest on any allegation concerning the state-court proceedings or judgment. A suit on such claims could not be characterized as an 'appeal' of the state-court judgment, which is the core concern of *Rooker–Feldman*."); see also In re BHB Enterps., LLC, 1997 WL 33344249, at *7.

In asserting the Causes of Action, the Trustee is not alleging that the Lexington Court erred in failing to find these transfers to constitute fraudulent transfers or preferences because these causes of action were never litigated in the state court proceedings.[3] See e.g., Hopkins v. Foothill Mountain, Inc. (In re Hopkins), 346 B.R. 294, 302 (Bankr. E.D.N.Y. 2006); Cf. Blixseth v. Kirschner (in re Yellowstone Mountain Club, LLC), 436 B.R. 598, 667 (Bankr. D. Mont. 2010) (explaining that the Trustee's fraudulent conveyance claims could not have been actually litigated or decided in the divorce court and thus, included in the settlement agreement and release approved by the state court). The Trustee's fraudulent transfer and preference causes of action assert an independent basis for relief expressly provided for under the Bankruptcy Code, which is not dependent upon an attack of the 2009 Settlement Agreement and 2009 Settlement

---

[3] To the extent Defendants argue that the adequacy of the consideration for the Settlement Agreement was determined by the State Court through its approval of the Settlement Agreement and its denial of the Rule 60(b) Motion, simple contract consideration that is required to approve the consideration included in the 2009 Settlement Agreement is not the equivalent of a determination that the Debtor received reasonably equivalent value within the meaning of § 548 for the Debtor's consideration. See In re Xonics Photochemical, Inc., 841 F.2d 198, 202 (7th Cir. 1988) nor did the state court consider the elements of 11 U.S.C. § 547 or 544(b) in conjunction with S.C. Code Ann. § 27-23-10. Furthermore, even if the consideration is determined to be adequate, the transfer may nevertheless be fraudulent under § 548(a)(1)(a) if made with the intent to defraud creditors, as the Trustee has alleged. Id. (citing King v. Ionization International, Inc., 825 F.2d 1180, 1186 (7th Cir. 1987).

Agreement Release and thus, the State Court Judgment and 60(b) Order.[4] See In re Chinin USA, Inc., 327 B.R. at 334; In re Maui Indus. Loan & Fin. Co., 454 B.R. 133, 136 (Bankr. D. Haw. 2011) ("The *Rooker-Feldman* doctrine does not apply to avoidance actions under sections 544 and 548."); In re Martyak, 432 B.R. 25, 31 (Bankr. N.D.N.Y. 2010) (stating that "[s]ince *Rooker-Feldman* does not apply when a federal statute specifically authorizes a lower federal court to vitiate a state court judgment, the doctrine is inapplicable to Debtor's avoidance action asserted under Code section 548"). Consequently, although a determination by this Court that the 2009 Settlement Agreement embodied in the State Court Judgment may not be enforced may contradict "'a legal conclusion that a state court has reached,'" such a determination is permitted under the *Rooker–Feldman* Doctrine. See Exxon Mobile, 544 U.S. at 293, 125 S. Ct. at 1528; see also Chinin USA. at 335 (quoting Gash Assocs., 995 F.2d at 728) ("The *Rooker–Feldman* doctrine asks: is the federal plaintiff seeking to set aside a state court judgment, or does he present some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party? If the former, then the district court lacks jurisdiction; if the latter, then there is jurisdiction and state law determines whether the defendant prevails under the principles of preclusion."). Furthermore, in asserting the § 544 claims, the Trustee is asserting the rights of an unsecured creditor, not the Debtor, and this unsecured creditor was not a party to the state court litigation or the 2009 Settlement Agreement. Therefore, the Court concludes that the *Rooker-Feldman* doctrine does not bar this Court from exercising jurisdiction.

---

[4] The Trustee also argues that the fraudulent transfer causes of action did not accrue until after the execution of the Settlement Agreement, when the transfer of consideration occurred, and thus were not included within the 2009 Settlement Release.

9

*b. The Rooker-Feldman Doctrine does not apply because the Trustee does not complain of an injury caused by the State Court Judgment or 60(b) Order.*

The Trustee further argues that the *Rooker-Feldman* doctrine is inapplicable to deprive the Court of jurisdiction to hear and determine the Causes of Action because the Causes of Action do not complain of injuries caused by the State Court Judgment or 60(b) Order. The Court agrees. In the Complaint, the Trustee asserts numerous causes of action, under both state and federal law, against the Defendants.[5] Defendants argue that these causes of action were released as part of the broad release contained within the 2009 Settlement Agreement, which was approved by the State Court Judgment. The Trustee does not allege that the State Court Judgment approving the 2009 Settlement Agreement or the 60(b) Order denying the Trustee's 60(b) Motion caused injuries to Debtor or Debtor's estate, but rather alleges that the transfer of consideration (the money and 2009 Settlement Release) pursuant to the settlement is avoidable as a fraudulent or preferential transfer under the Bankruptcy Code. The transfers themselves are the source of the alleged injury, not the State Court Judgment or 60(b) Order. In re Chinin USA, Inc., 327 B.R. 325, 334 (Bankr. N.D.Ill. 2005) (concluding that, in asserting fraudulent transfer claims relating to a transfer made pursuant to a state court settlement agreement, the trustee did not allege an injury resulting from the state court judgment because the injury was caused by the settlement agreement itself, not the state court judgment; thus, *Rooker-Feldman* did not apply); see e2 Creditors' Trust v. Farris (In re e2 Commc'ns, Inc.), 320 B.R. 849, 859 (Bankr. N.D. Tex.

---

[5] None of the causes of action raised in this adversary proceeding are the same as the causes of action raised before the Lexington Court. The Lexington Court merely approved the 2009 Settlement Agreement, which contained the 2009 Settlement Release. The terms of this Release provide that the Debtor and the Sturgill Group release and forever discharge Wade B. Cordell, Bradshaw O. Cordell, and John F. Blevins, from any and all claims, demands, debts, liabilities, obligations, contracts, agreements, causes of action, suits and costs, of whatever nature, character or description, whether known or unknown, suspected or unsuspected, anticipated or unanticipated, which Defendants or the Company may have had, may have, or may hereafter have or claim to have against Wade B. Cordell, Bradshaw O. Cordell, and John F. Blevins through September 2, 2009.

2004) (determining that the release of a corporate debtor's causes of action against a former director was a "transfer" subject to avoidance as a fraudulent conveyance).

> *III. The Rooker-Feldman Doctrine does not apply because the Trustee does not seek review and rejection of the State Court Judgment and Rule 60(b) Order.*

Even if the federal plaintiff was injured by a state-court judgment, the federal plaintiff does not always seek review and rejection of that judgment by the district court. Great Western, 615 F.3d at 168. For *Rooker-Feldman* to apply, the plaintiff must be inviting the district court to scrutinize and invalidate the state judgments in an appellate review capacity; in other words, the plaintiff must be asking the district court to determine whether the state court reached its result in accordance with the law. Great Western, 615 F.3d at 169 (citing Adkins v. Rumsfeld, 464 F.3d 456, 460 (4th Cir. 2006)). As the Tenth Circuit explained in Bolden v. City of Topeka, Kansas, 441 F.3d 1129, 1143 (10th Cir. 2006), the *Rooker-Feldman* doctrine does not bar a federal court suit raising a claim previously decided by a state court unless the federal suit actually seeks to overturn the state court judgment, as opposed to simply contradicting that judgment:

> Appellate review—the type of judicial action barred by Rooker– Feldman—*consists of a review of the proceedings already conducted by the "lower" tribunal to determine whether it reached its result in accordance with law.* When, in contrast, the second court tries a matter anew and reaches a conclusion contrary to a judgment by the first court, without concerning itself with the bona fides of the prior judgment (which may or may not have been a lawful judgment under the evidence and argument presented to the first court), it is not conducting appellate review, regardless of whether compliance with the second judgment would make it impossible to comply with the first judgment. In this latter situation the conflict between the two judgments is to be resolved under preclusion doctrine, not Rooker– Feldman.

Bolden, 441 F.3d at 1143 (emphasis added). While Defendants alluded to preclusion principles in their arguments, the only basis for relief set forth in their motion to dismiss was application of the *Rooker-Feldman* doctrine. Considering the Trustee's claims against the Defendants in this adversary proceeding, the Court finds that it is not being asked to consider the validity of the

11

Lexington Court's orders or overturn its judgments. Rather, it appears that any ruling in favor of the Trustee on these claims would merely contradict the State Court Judgment and 60(b) Order.

Defendants argue that the Trustee voluntarily invoked the jurisdiction of the South Carolina Circuit Court by filing the Rule 60(b) Motion and cannot now ask this Court to overturn the judgment denying that Motion. However, as discussed above, in his pursuit of the Causes of Action raised in the Complaint, the Trustee does not ask the Court to find that the state court's order denying the Rule 60(b) Motion was in error. Instead, the Trustee asserts that the transfers made as a result of the 2009 Settlement Agreement are avoidable under the Bankruptcy Code, which does not require consideration of validity of the 60(b) order. Moreover, Defendants failed to identify any case law in support of their argument that a trustee would be barred by the *Rooker-Feldman* doctrine from seeking avoidance of transfers made pursuant to a state court settlement where the trustee had attempted to intervene or obtain relief from the state court on different grounds prior to filing the adversary proceeding.[6]

## **CONCLUSION**

Based on the foregoing, the Court finds that the *Rooker-Feldman* doctrine does not apply to divest this Court of jurisdiction over the Trustee's claims against the Defendants because the Trustee's claims (1) are independent, federal claims;[7] (2) do not complain of injuries caused by

---

[6] The Trustee cited the In re Miller case, where the bankruptcy court found that an individual chapter 11 debtor's pursuit of claims which she had voluntarily dismissed with prejudice in state court was not barred by the *Rooker-Feldman* doctrine because the debtor did not seek review and rejection of the state court judgment. The bankruptcy court held that the adjudication of the debtor's fraudulent transfer claim, in which she alleged that her state court claims were fraudulently transferred through the agreement for entry of judgment in the action, did not amount to an appeal of the states court judgment in violation of the *Rooker-Feldman* doctrine. In the Miller case, the debtor was clearly a party to the prior state court action. See In re Miller, No. 09-15324-FJB, 2009 WL 3398716, at *4 (Bankr. D. Mass. Oct. 16, 2009)

[7] If the 2009 Settlement Release is subject to avoidance as a fraudulent transfer, then the release could not be relied upon to obtain dismissal of the other causes of action raised in the Complaint. See e2 Creditors' Trust v. Farris (In re e2 Commc'ns, Inc.), 320 B.R. 849, 859 (Bankr. N.D. Tex. 2004) (determining that the release of a corporate debtor's causes of action against a former director was a "transfer" subject to avoidance as a fraudulent conveyance and that as the avoidability of the release was at issue, the former director-defendant could not rely on the releases to obtain summary judgment on the breach of fiduciary duty claims asserted against the former director ....")

the State Court Judgment and 60(b) Order, and (3) do not invite this Court to review and reject the State Court Judgment and 60(b) Order. Accordingly, Defendants' Motion to Dismiss is denied.

**AND IT IS SO ORDERED**.

**FILED BY THE COURT**
**08/06/2013**



/s/ John E. Waites
US Bankruptcy Judge
District of South Carolina

Entered: 08/06/2013

13