# UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| IN RE:<br><br>Infinity Business Group, Inc.,<br><br>        Debtor.<br><br>Robert F. Anderson, as Chapter 7 TRUSTEE FOR INFINITY BUSINESS GROUP, INC.,<br><br>        Plaintiff,<br>vs.<br><br>WADE CORDELL, O. BRADSHAW CORDELL, CORDELL, LLC, THE CORDELL GROUP, LLC, GIBSON COMMONS, LLC, BRYON K. STURGILL, STURGILL & ASSOCIATES, INC., JOHN F. BLEVINS, LAW OFFICES OF JOHN F. BLEVINS, LLC, GOLDEN GHOST, INC., HAINES H. HARGRETT, DONALD BRENT GRAFTON, D. LARRY GRAFTON, GRAFTON & COMPANY, PLLC, MORGAN KEEGAN & COMPANY, INC., and KEITH E. MEYERS,<br><br>        Defendants. | Bankruptcy Case No. 10-06335-jw<br><br>Adv. Proc. No. 12-80208-jw<br><br>Chapter 7<br><br><br>**ORDER DENYING<br>MOTION TO COMPEL** |

       This matter is before the Court on the Motion to Compel filed by Morgan Keegan & Company, Inc. and Keith E. Meyers (collectively, "MK Defendants"). The MK Defendants seek an order compelling Robert F. Anderson, as Chapter 7 Trustee for Infinity Business Group, Inc. ("Trustee") to provide full and complete disclosure of certain documents he withheld from production to the MK Defendants on the basis of attorney client privilege. The Trustee objected to the Motion and a hearing was held. Pursuant to Fed. R. Civ. P. 52, which is made applicable to this adversary proceeding by Fed. R. Bankr. P. 7052, the Court makes the following findings of

fact and conclusions of law.

## FINDINGS OF FACT

*I.     Procedural Background*

1.     On August 31, 2012, the Trustee commenced this adversary proceeding by filing the Complaint against the MK Defendants among others.  The Complaint asserts the following causes of action against the MK Defendants:  Constructive Fraud, Federal Securities Fraud, Malpractice, Common Law Fraud, Aiding and Abetting Fraud, Breach of Contract, Breach of Fiduciary Duty, Aiding and Abetting Breach of Fiduciary Duty, and Unjust Enrichment.

2.     The Complaint alleges that certain members of the management of Infinity Business Group, Inc. ("Debtor") engaged in a scheme to make Debtor appear more profitable than it was by using fraudulent financial statements to attract funds from potential investors and obtain loans, which those members of management then looted from Debtor.  The MK Defendants are alleged to have known that the financial statements were false, but to have used them to prepare documents used to attract investors for Debtor.

3.     On October 18, 2012, the MK Defendants filed a Motion to Dismiss.  After several continuances requested by the parties, the Court conducted a hearing on February 1, 2013, and issued orders on June 19, 2013 and July 15, 2013, which granted in part and denied in part the Motion to Dismiss.

4.     Since the entry of the orders regarding the Motion to Dismiss, the parties have engaged in extensive discovery for more than eighteen months and discovery is ongoing.

5.     On March 21, 2014, the MK Defendants served their First Request for Production of Documents to the Trustee.  Due to the significant volume of data and documents requested, production of documents by the Trustee to the MK Defendants has been made on a rolling basis

beginning June 11, 2014, and was still ongoing as of the date of the hearing on the Motion to Compel. The documents requested by the MK Defendants include, in relevant part: (1) all documents relating to the MK Defendants; (2) all documents relating to communications between anyone and Defendants in this proceeding, or their representatives and relating to: the capital raising efforts of Debtor, the Grafton Financials, and/or any other allegations in the Complaint; and (3) all documents relating to the engagement of or services provided by the MK Defendants.

6. The Trustee has withheld numerous documents from disclosure to the MK Defendants due to attorney-client and work product privilege and produced others with redactions, and has provided two privilege logs as to those documents.

7. On November 3, 2014, counsel for the MK Defendants advised the Trustee that they considered the attorney-client privilege to have been previously waived in a June 16, 2011 e-mail sent by Trustee's counsel at the time, which is discussed further below. Therefore, the MK Defendants demanded production of the withheld documents.

## II. *Factual Background Relating to Alleged Waiver*

8. On or about December 22, 2010, Morgan Keegan & Company, Inc. ("Morgan Keegan") received a subpoena from the South Carolina Office of the Attorney General, Securities Division ("SCAG") in connection with its investigation of Debtor. The subpoena ("SCAG Subpoena") sought broad categories of documents relating to the Morgan Keegan's involvement with Debtor and several of the other defendants in this adversary proceeding. In preparing its response, counsel for Morgan Keegan identified documents in its possession that included communications between Debtor and its in-house and outside counsel that were responsive to the subpoena, but for which the Trustee may have chosen to assert the attorney-client privilege.

9. Counsel for Morgan Keegan contacted the Trustee's counsel at the time, Stephanie

3

Weissenstein of the Law Offices of Desa Ballard, to notify the Trustee of the SCAG Subpoena and determine whether the Trustee intended to assert the attorney-client privilege as to the responsive documents.

10.     On May 11, 2011, during a hearing in the underlying bankruptcy case regarding a motion for relief from stay filed by several individuals who had commenced a state court action against several of the same defendants in this adversary proceeding, the Trustee reported to the Court that the filing of his complaint was delayed due to his efforts to coordinate with the Attorneys General in multiple states, including SCAG.

11.     On May 26, 2011, SCAG filed a complaint commencing an administrative proceeding before the Securities Commission of South Carolina, In re Matter of Infinity Business Group, Inc., file no. 09089 ("SCAG Administrative Proceeding") regarding the securities-related activities of Debtor, Wade B. Cordell, Haines Hargrett, John F. Blevins, and Otis B. Cordell.

12.     On June 2, 2011, counsel for Morgan Keegan sent a letter to Ms. Weissenstein stating that she had left two voicemail messages with Ms. Weissenstein indicating that she needed to discuss Morgan Keegan's production of documents relating to the Debtor to the SCAG, including documents containing communications with Debtor's in-house and outside counsel.

13.     On June 3, 2011, counsel for Morgan Keegan and Ms. Weissenstein participated in a telephone conference to discuss Morgan Keegan's production of documents in response to the SCAG Subpoena.

14.     On June 16, 2011, Ms. Weissenstein sent an e-mail ("the June 16, 2011 e-mail") to counsel for Morgan Keegan succinctly stating: "The Trustee waives any privilege, so you may produce the requested documents."

15.     On December 11, 2014, the Trustee and counsel for SCAG executed a document

memorializing a mutual understanding and agreements previously reached by them regarding the preservation of attorney-client and work product privileges as to materials and information exchanged between the Trustee and SCAG ("Common Interest Memorandum"). The Common Interest Memorandum reflects their agreement to treat any materials or information exchanged as confidential and recognizes their common interests in the investigation of the Debtor.

## CONCLUSIONS OF LAW

The MK Defendants seek an order compelling the Trustee to provide full and complete disclosure, in response to their First Request for Production of Documents, of documents they argue were improperly withheld from production by the Trustee on the basis of attorney-client privilege. The MK Defendants argue that the Trustee may not withhold the documents at issue because the Trustee effected a blanket waiver of all pre-petition communications between the Debtor and its counsel via the June 16, 2011 e-mail. Even if the attorney-client privilege was not waived by the June 16, 2011 e-mail, the MK Defendants further argue that any applicable privilege was waived by the Trustee's failure to provide adequate privilege logs pursuant to Fed. R. Civ. P. 26(b)(5)(1), made applicable in this adversary proceeding by Fed. R. Bankr. P. 7026.

*I.     Attorney-Client Privilege & Work Product Doctrine – Elements*

The federal common law regarding attorney-client privilege applies because this adversary proceeding involves both federal and state law claims. Vieira v. AGM II LLC (In re Worldwide Wholesale Lumber, Inc., 392 B.R. 197 (Bankr. D.S.C. 2008) (citing Virmani v.Novant Health, Inc., 259 F.3d 284, 287 n.3 (4th Cir. 2001)). As the party asserting the privilege, the Trustee bears the burden of demonstrating the applicability of the privilege to the documents withheld on those grounds. N.L.R.B. v. Interbake Foods, LLC, 637 F.3d 492, 501 (4th Cir. 2011) (citing U.S. v. Jones, 696 F.2d 1069, 1072 (4th Cir. 1982)). The Fourth Circuit has set forth the following test

5

for determining whether the attorney-client privilege applies:

> (1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is a member of the bar of a court, or is his subordinate and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived.

Id. (quoting Jones, 696 F.2d at 1072). Further, when claiming the work-product privilege, "the party must demonstrate that the documents in question were created in preparation for litigation." Id. (quoting In re Grand Jury Proceedings, 33 F.3d 342,348 (4th Cir. 1994) (citing Hickman v. Taylor, 329 U.S. 495, 509-14 (1947)). This Court has previously recognized that a trustee of a corporation in bankruptcy acquires both the right to assert the attorney-client privilege and the power to waive that privilege. Vieira v. AGM II, LLC (In re Worldwide Wholesale Lumber, Inc.), 392 B.R. 197, 201 (Bankr. D.S.C. 2008) (citing Commodity Futures Trading Commission v. Weintraub, 471 U.S. 343, 358 (1985)). At this time, the parties do not appear to dispute that the attorney-client or work product privilege may apply to the documents withheld by the Trustee. The issue is whether any applicable privilege has been waived.

### II.    *Waiver of the Attorney-Client Privilege*

The MK Defendants argue that the waiver by Trustee's counsel via the June 16, 2011 email was unequivocal and distinct. They further argue that, in addition to waiving any privilege between Debtor and its counsel, the waiver would apply to all communications on the same subject. Therefore, the MK Defendants argue that the Trustee is barred from withholding any documents responsive to their Requests for Production on the basis of attorney-client or work product privilege.

6

Waiver of the attorney client privilege may be either explicit or implied. First South Bank v. Fifth Third Bank, N.A., No. 7:10-2097-MGL, 2013 WL 1840089 (D.S.C. May, 1, 2013) (citing Floyd v. Floyd, 615 S.E.2d 465, 483 (S.C. Ct. App. 2005)). "Any voluntary disclosure by a client to a third party waives the attorney-client privilege not only as to the specific communication disclosed, but also to all communications between the same attorney and the same client on the same subject." Id. (quoting Marshall v. Marshall, 320 S.E.2d 44, 46-47 (S.C. Ct. App. 1984)). Both explicit and implied waivers must be "distinct and unequivocal." Id. (citing State v. Thompson, 495 S.E.2d 437, 439 (S.C. 1998)).

The communication from Trustee's counsel to Morgan Keegan's counsel in the June 16, 2011 e-mail is succinct and straightforward: "The Trustee waives any privilege, so you may produce the requested documents." However, the Trustee contends that the July 16, 2011 e-mail was the Trustee's limited position on Morgan Keegan's production of documents to the SCAG in response to the SCAG Subpoena and did not result in a waiver due to the Trustee's common interest agreement with the SCAG.

    *a. Common Interest Doctrine*

The common interest doctrine provides an exception to the general rule that an evidentiary privilege is waived when the party asserting the privilege shares the communication with a third party. See In re Grand Jury Subpoenas, 902 F.2d 244, 248 (1990). The common interest doctrine "protects the transmission of data to which the attorney-client privilege or work product protection has attached when it is shared between parties with a common interest in a legal matter." Tobaccoville USA, Inc. v. McMaster, 692 S.E.2d 526, 531 (S.C. 2010) (citing John Freeman, *The Common Interest Rule*, 6 S.C. Law. 12 (May/June 1995) (internal quotations omitted)); First South Bank v. Fifth Third Bank, N.A., No. 7:10-2097-MGL, 2013 WL 1840089 (D.S.C. May 1, 2013).

7

The doctrine allows "parties whose legal interests coincide to share privileged materials with one another in order to more effectively prosecute or defend their claims." Am. Mgmt. Servs., LLC v. Dep't of the Army, 703 F.3d 724, 732 (4th Cir. 2013) (citing Hunton & Williams v. DOJ, 590 F.3d 272, 277 (4th Cir. 2010)); TJN, Inc. v. Superior Container Corp. (In re TJN, Inc.), C/A No. 94-73386-W, Adv. Pro. No. 96-8108, slip op. (Bankr. D.S.C. Jan. 23, 1997). Information protected by this doctrine cannot be waived without the consent of all parties who share the privilege. Id. (citing In re Grand Jury Supoenas, 902 F.2d at 248). A written agreement is not required for the common interest doctrine to apply, but there must be an agreement or a meeting of the minds. Am. Mgmt Servs., 703 F.3d at 733.

The Court will assume, for the purpose of deciding whether the common interest doctrine applies, that the documents at issue are subject to an otherwise valid privilege. See In re Grand Jury Subpoenas, 902 F.2d at 249 n.** To meet his burden of establishing that the common interest doctrine applies, the Trustee presented the Common Interest Memorandum, a document executed by the Trustee and Tracy Meyers on behalf of SCAG on December 11, 2014, which provides that it is intended to memorialize the mutual understanding and agreements previously reached by their offices regarding the disclosure of documents and information relating to Debtor. It further provides that documents were exchanged to facilitate the Trustee and SCAG's investigation of alleged violations of the law by the Debtor and their shared agreement not to waive any applicable claim of the attorney-client privilege or work product protections and treat any materials and information disclosed by either party as confidential. In addition, the Trustee presented the Affidavit of Tracy Meyers, executed on February 20, 2015, wherein she states that:

> The SCAG in pursuing its investigation related to file no. 09089 and the Trustee in pursuing his investigation into causes of action belonging to the Trustee and the Debtor shared a unity of interest in their respective investigations and developing the facts and legal theories that ultimately became the SCAG Complaint and the

8

> Trustee Complaint and mutually relied on one another's cooperation, advice, input, and compiling and sharing of information (including any documents produced by third parties, as applicable) with the express understanding that any information, strategy, and communications shared, made, then-existing, produced, or created, whether written or oral, including confidential, privileged, documents protected by the work product doctrine, or for which any other privilege or protection could be claimed, would remain confidential in order to more effectively prosecute their claims and with the further understanding that neither the Trustee nor the SCAG could unilaterally waive any such protection or privilege.

Meyers further states in her affidavit that "the cooperative efforts of the SCAG and the Trustee began on or before October of 2010, whereby the Trustee and the SCAG had a meeting of the minds as to the SCAG and the Trustee's common interests, which was later memorialized in the Common Interest [Memorandum]." These statements are consistent with the Trustee's earlier statements during the May 11, 2011 hearing before this Court in the underlying bankruptcy case where he reported that the filing of the Complaint to commence this adversary proceeding had been delayed due to his efforts to coordinate with Attorneys General in several state, including SCAG, regarding their investigations of the Debtor.

The MK Defendants argue that the Common Interest Memorandum was merely an effort by the Trustee to cure or rescind his waiver after the fact. However, as discussed above, a common interest agreement does not have to be reduced to writing in order for the doctrine to apply. See Am. Mgmt Servs., 703 F.3d at 733. The credible and uncontradicted Affidavit of Meyers, an officer of the State of South Carolina, establishes the requisite agreement between the Trustee and SCAG, prior to the alleged waiver, to cooperate in their investigations and development of legal theories, which led to the filing of the SCAG Administrative Proceeding and the Complaint commencing this adversary proceeding, and thus supports the application of the common interest doctrine. The Court notes that the Trustee's joint efforts with SCAG are consistent with his statutory duties to collect and reduce to money the property of the estate under 11 U.S.C. § 704,

including causes of action, and to investigate and report to the U.S. Attorney pursuant to 18 U.S.C. § 3057 if he believes a crime has been committed. The MK Defendants further argue that the Common Interest Memorandum makes no mention of the June 16, 2011 express waiver effected by Trustee's counsel. Even if the June 16, 2011 e-mail was construed broadly to encompass more than the Trustee's limited position on Morgan Keegan's production of documents to the SCAG in response to the SCAG Subpoena, the application of the common interest doctrine prevents the June 16, 2011 email from operating as a waiver because the Trustee cannot unilaterally waive the privilege without the consent of SCAG, and there is no evidence that SCAG consented to a waiver of any applicable privilege. Am. Mgmt Servs., 703 F.3d at 732.

Based on the evidence presented, the Court finds that the Trustee has met his burden of demonstrating that he and the SCAG had entered into an agreement or meeting of the minds to pursue a joint legal strategy prior to June of 2011, and therefore the common interest doctrine applies to prevent the waiver of the attorney-client and work product privileges as a result of the June 16, 2011 e-mail and subsequent disclosure of potentially privileged documents by the MK Defendants to SCAG.[1]

    b. *Selective or Qualified Waiver*

The MK Defendants further argue that any argument that the documents were produced for a limited purpose and thus maintain the protection of the attorney-client privilege is unavailable to the Trustee as the principle of selective or qualified waiver is not recognized under South Carolina or Fourth Circuit law. See Duplan Corp v. Deering Milliken, Inc., 397 F.Supp. 1146, 1161-62 (D.S.C. 1974); Felder v. Wyman, 139 F.R.D. 85, 88 (D.S.C. 1991); U.S. v. Jones, 696

---

[1] The MK Defendants have not specifically identified any documents they disclosed to the SCAG that contained privileged material. The Trustee asserted that it reviewed the documents the MK Defendants identified as having been produced to SCAG and found no privileged communications.

10

F.2d at 1072; U.S. v. Pollard (In re Martin Marietta Corp.),856 F.2d 619 (4th Cir. 1988).  It is evident from the Trustee's response that he does not assert that a selective or qualified waiver was made in connection his approval of MK Defendants' production to the SCAG.  The production was allowed for the purpose of furthering the Trustee and SCAG's common interest in investigating suspected violations of the law by the Debtor and individuals associated with the Debtor.  Therefore, due to the application of the common interest doctrine, no waiver was made at all, let alone a selective or qualified waiver. None of the cases cited by the MK Defendants regarding selective or qualified waiver addressed situations where the common interest doctrine was applicable, as in this case.  Since the Court has concluded that the common interest doctrine applies to prevent any waiver of applicable privileges, it is unnecessary to address the parties' arguments regarding selective or qualified waiver or the application of Fed. R. Evid. 502, which defines the scope of a waiver made through disclosure in federal or state proceedings.

### III.    *Crime-Fraud Exception*

While expressly not asserting that the crime-fraud exception to the attorney-client privilege applies, the MK Defendants argue that the bases for the claims asserted in the Complaint are inconsistent with the crime-fraud exception to the attorney-client privilege, because the Complaint alleges that the defendant directors, including Defendant Blevins, who served as corporate counsel to Debtor, engaged in a scheme to loot Debtor's assets and that the MK Defendants assisted in perpetrating this scheme.  In response, the Trustee denies that he is asserting in the Complaint that Debtor's pre-petition counsel was a participant in the fraud and further argues that the MK Defendants have failed to meet their burden of demonstrating the applicability of the crime-fraud exception to the communications at issue in this Motion to Compel.

"The crime-fraud exception to the attorney-client privilege provides that a client's

11

communications with an attorney will not be privileged if made for the purpose of committing or furthering a crime or fraud." In re Grand Jury Subpoena, 884 F.2d12 (4th Cir. 1989) (citing Clark v. U.S., 289 U.S. 1 (1933); In re Grand Jury Proceedings, 727 F.2d 1352, 1355 (4th Cir. 1984)). The party asserting the applicability of the crime-fraud exception carries the burden of making a prima facie showing that the privileged communications fall within the exception. See In re Grand Jury Proceedings, 401 F.3d 247, 251 (4th Cir. 2005). Other than generic references to the Complaint, the MK Defendants have not presented any evidence to demonstrate that the privileged communications fall within the crime-fraud exception. Based on the evidence presented, the Court finds that the MK Defendants have failed to meet their burden of demonstrating that the crime-fraud exception applies to allow production of otherwise privileged communications or work product and therefore the Motion to Compel on this ground must be denied.

### IV.   *Assertion of privilege is inconsistent with the positions asserted in the Complaint*

The MK Defendants argue that the Trustee's assertion of attorney-client privilege is inconsistent with his allegations in the Complaint that the MK Defendants and other named defendants, including John Blevins, who served as counsel to Debtor, were involved with a systemic scheme of looting Debtor and acted in a manner that benefitted themselves, not Debtor. The MK Defendants assert that courts have recognized that communications between corporate counsel and corporate employees or agents may be privileged if they concern matters within the scope of one's corporate duties, citing In re Worldwide Wholesale Lumber, Inc., 392 B.R. 197 (Bankr. D.S.C. 2008) and Duplan Corp. v. Deering Milliken, Inc., 397 F.Supp. 1146, 1164 (D.S.C. 1974). Since the conduct alleged in the Complaint cannot be said to be within the scope of the defendants' corporate duties, the MK Defendants argue the privilege should not apply. The MK Defendants' arguments mischaracterize the holdings in theses cases. In Worldwide, the Court

12

addressed the limited issue of whether the attorney-client privilege applied to *post petition* communications by a *former* president/director of a debtor and counsel for the Chapter 7 trustee of that debtor, and held that such communications would be privileged where the communications concerned matters within the scope of his former corporate duties. 392 B.R. at 203. In the present action, the communications at issue occurred pre-petition between corporate counsel and Debtor's directors/employees during the scope of their employment. In Milliken, the district court applied the "control group" test and "subject matter" test to determine whether the privilege applied to communications between an attorney and a corporate client's employees. For the privilege to apply, the communications must (1) be limited to persons within the control group of a corporation and those agents, employees, and representatives acting at the direction of a control group member and (2) be incident to a request for or the rendition of legal advice. Milliken, 397 F.Supp. at 1163-64. The court did not appear to consider whether the communications concerned matters within the scope of the employee's corporate duties as a factor in its analysis of whether the privilege applied. Accordingly, the MK Defendants' Motion to Compel on this ground must also be denied.

### V.     *Inadequacy of the Trustee's Privilege Logs*

The MK Defendants further argue that the attorney-client and work product privileges have been waived by the failure of the Trustee to provide a privilege log that sufficiently describes the documents identified in the two privilege logs that have been provided. Specifically, the MK Defendants assert that for many of the documents withheld from production, the Trustee fails to identify the author of the document, the recipient of the document, whether any individuals received cc's of the document, and does not provide an adequate description of the communication at issue in order to evaluate the validity of the privilege. In response, the Trustee agreed at the hearing to revise the privilege logs and to confer and resolve any deficiencies in the logs.

Fed. R. Civ. P. 26(b)(5)(A), which is made applicable to adversary proceedings by Fed. R. Bankr. P. 7026, provides that "[w]hen a party withholds information otherwise discoverable by claiming that the information is privileged or subject to protection as trial-preparation material, the party must: (i) expressly make the claim; and (ii) describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." To comply with these requirements, the Trustee must produce a privilege log that "identifies each document withheld, information regarding the nature of the privilege/protection claimed, the name of the person making/receiving the communication, the date and place of the communication, and the document's general subject matter." AVX Corp v. Horry Land Co., Inc., No. 4:07-cv-3299-TLW-TER, 2010 WL 4884903 (D.S.C. Nov. 24, 2010) (quoting Victor Stanley, Inc. v. Creative Pipe, Inc., 250 F.R.D. 251, 264 (D.Md. 2008)). "Failure to produce a timely or sufficient privilege log may constitute a forfeiture of any claims of privilege." Id. (citing cases).

Considering the substantial number of documents subject to review in response to the MK Defendants' broad request for production, the absence of evidence of bad faith or unjustifiable delay on the part of the Trustee in connection with his preparation of the two original privilege logs, and the Trustee's agreement to provide revised privilege logs to satisfy these requirements, the Court is not inclined to find a waiver of the attorney-client privilege due to the alleged insufficiency of the privilege logs at this time. See Sprint Commc'ns Co. L.P. v. Big River Tel. Co., LLC, No. 08-2046-JWL, 2009 WL 2878446 (D. Kan. Sept. 2, 2009) (noting that waiver is a harsh sanction and declining to apply penalty of waiver of privilege where there was no indication of bad faith in the party's failure to produce a complete privilege log and the party agreed to supplement its privilege log).

**CONCLUSION**

For the foregoing reasons, the MK Defendants' Motion to Compel is denied. Both parties' requests for fees and costs incurred as a result of the Motion to Compel are denied. Unless already provided, the Trustee shall submit revised privilege logs to the MK Defendants on or before April 30, 2015.

**AND IT IS SO ORDERED.**

**FILED BY THE COURT**
**04/03/2015**



Entered: 04/03/2015

*John E Waites*
US Bankruptcy Judge
District of South Carolina