# U.S. BANKRUPTCY COURT
## District of South Carolina

Case Number: **10-06335-jw**
Adversary Proceeding Number: **12-80208-jw**

## Order Approving Settlement and Compromise

The relief set forth on the following pages, for a total of 15 pages including this page, is hereby ORDERED.

**FILED BY THE COURT**
**07/19/2016**



_____

US Bankruptcy Judge
District of South Carolina

Entered: 07/20/2016

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF SOUTH CAROLINA**

| | |
|---|---|
| IN RE:<br><br>INFINITY BUSINESS GROUP, INC.,<br><br>    Debtor.<br><br>―――――――――――――――――<br><br>ROBERT F. ANDERSON, as Chapter 7 Trustee for Infinity Business Group, Inc.,<br><br>    Plaintiff,<br><br>v.<br><br>WADE CORDELL, O. BRADSHAW CORDELL, CORDELL, LLC, THE CORDELL GROUP, LLC, GIBSON COMMONS, LLC, BRYON K. STURGILL, STURGILL & ASSOCIATES INC., JOHN F. BLEVINS, LAW OFFICES OF JOHN F. BLEVINS, LLC, GOLDEN GHOST, INC., HAINES H. HARGRETT, DONALD BRENT GRAFTON, D. LARRY GRAFTON, GRAFTON & COMPANY, PLLC, MORGAN KEEGAN & COMPANY, INC., and KEITH E. MEYERS,<br><br>    Defendants. | **Bankruptcy Case No. 10-06335-jw**<br><br><br><br><br><br><br><br>**Adv. Proc. No. 12-80208-jw** |

## ORDER APPROVING SETTLEMENT AND COMPROMISE

This matter comes before the Court upon the Amended Notice of Settlement ("Amended Settlement Notice"), filed April 27, 2016, which outlined the terms of a settlement ("Blevins Settlement") of the causes of action asserted by the Plaintiff, Robert F. Anderson, in his capacity as Chapter 7 Trustee ("Trustee") of the bankruptcy estate ("Estate") of Infinity Business Group, Inc. ("Debtor"), in the above-captioned adversary proceeding, against named-defendants John F.

1

Blevins ("Blevins"), the Law Office of John F. Blevins ("Law Offices"), and Golden Ghost, Inc. ("Golden Ghost").[1]

The Court has carefully reviewed the evidence in the record, including the affidavits the Trustee's experts, Michael J. Virzi ("Virzi") and Scott N. Schools ("Schools"), and considered the arguments of counsel made in their briefs and at the hearing, together with the testimony of the Trustee. For the reasons set forth in more detail below, the Trustee's motion for approval of the Blevins Settlement is granted, subject to the limitations set forth herein,[2] and based on the following findings of fact and conclusions of law.[3]

## I. FINDINGS OF FACT

**A. Terms of Blevins Settlement Noticed to Parties-in-Interest**

The Amended Settlement Notice outlined the terms of the Blevins Settlement entered into between the Blevins Group Defendants and the Trustee on November 29, 2015. In addition, the Amended Settlement Notice outlined the terms of four separate agreements whose terms were not severable from the terms of the Blevins Settlement: (1) the Confession of Judgment of the Blevins Group Defendants; (2) the Covenants Not to Execute Agreement ("Covenants Not to Execute"); (3) the Release Agreement; and (4) the Amendment to Settlement Agreement. The Amended Settlement Notice also outlined the terms of the common interest agreement ("Common Interest

---

[1]  Collectively, Blevins, the Law Offices, and Golden Ghost are referred to as the "Blevins Group Defendants."

[2]  If any term or provision in any attachment to the Amended Settlement Notice differs in any material respect with the terms of the Blevins Settlement set forth in the Amended Settlement Notice, reviewed at the Hearing, or set forth in the Joint Statement of Dispute, even if any such attachment is an operative document or core source document, the Court is not approving these differences because any such material difference is beyond what has been presented to and considered by the Court in issuing this Order.

[3]  The Court enters the following findings of fact and conclusions of law pursuant to Fed. R. Civ. P. 52(a)(1), made applicable to this contested matter pursuant to Fed. R. Bankr. P. 7052 and 9014.

Agreement"), which is severable from the foregoing agreements and which the parties asserted is effective whether or not the Court approved the Blevins Settlement.[4] The Common Interest Agreement was likewise intended by the parties thereto to remain enforceable even if the Blevins Settlement was otherwise rendered or deemed unenforceable.

The Blevins Settlement and Supporting Documents provide, in relevant part:

- To ensure and secure performance of the warranties and obligations as set forth in the Blevins Settlement and Covenants Not to Execute, the Blevins Group Defendants jointly and severally confessed judgment in favor of the Trustee in the sum of $1,321,198.88. The confessions may only be recorded and enforced by the Trustee if a court of competent jurisdiction determines that the Blevins Group Defendants breached the terms of the Blevins Settlement.

- If the Blevins Group Defendants perform their obligations under the settlement, at the conclusion of the Adversary Proceeding the Trustee must execute the Release Agreement which contains substantially reciprocal mutual global releases between (1) the Trustee (and his professionals), the Debtor, and the Estate and (2) the Blevins Group Defendants.

- Upon entry into the Blevins Settlement, the Trustee and the Blevins Group Defendants expressly created the Common Interest Agreement, which was prophylactic in nature and intended to protect the work product and other applicable privileges and protections of the Trustee and any third-party with whom the Trustee had entered into a common interest agreement.

- The Covenants Not to Execute requires, among other things, the Blevins Group Defendants to assist the Trustee in his continued investigations in the Adversary Proceeding. The Blevins Group Defendants must maintain as confidential any information and materials learned/discussed/reviewed/expounded upon by the Blevins Group Defendants that related to the Trustee's investigations and/or the investigation of any third party with whom the Trustee is a party to a common interest agreement. If the Blevins Group Defendants received requests for any information relating to the Adversary Proceeding or the Complaint, they are required to provide the Trustee with notice of any such request in order to allow the Trustee to assert any applicable claims of work product, privilege, or other applicable protection to prevent disclosure of any protected information.

---

[4] The Confession of Judgment of the Blevins Group Defendants, the Covenants Not to Execute, Release Agreement, Amendment to Settlement Agreement, and Common Interest Agreement, together with the Blevins Settlement, will be collectively referred to herein as the "Blevins Settlement and Supporting Documents."

3

- The Blevins Group Defendants agreed to perform their obligations in good faith, and covenanted to observe and honor their respective obligations of candor to the court and to honor their respective oaths of telling the truth in the event any such oath or duty arose.

The Amended Settlement Notice emphasized that the settlement was: (1) intended to settle only the Trustee's claims against the Blevins Group Defendants; (2) entered into by the Blevins Group Defendants without an admission of liability; and (3) not intended to impact the other claims asserted in the Adversary Proceeding. The Amended Settlement Notice also discloses that the Trustee expressly contemplates further litigation against other tortfeasors.

**B. Positions of Objecting Parties**

Morgan Keegan & Company, Inc. ("Morgan Keegan") filed an Objection to the Amended Settlement Notice ("MK Settlement Objection"). Regions Bank and Regions Financial Corporation (collectively, "Regions") also objected to the proposed settlement ("Regions Settlement Objection").[5]

The Settlement Objections were primarily based on grounds of public policy. Morgan Keegan argued that because Blevins sent correspondence to counsel for Morgan Keegan offering his cooperation to the MK Defendants in the Adversary Proceeding before the Trustee's entry into the Blevins Settlement, the Court's approval of the Blevins Settlement "would implicitly condone unseemly conduct that smacks of trafficking in violation of [18 U.S.C. § 201(c)(2)], which imposes criminal penalties for offering anything of value in exchange for testimony by a witness." MK Settlement Objection, at 7. Morgan Keegan analogized the Blevins Settlement to the settlement considered by the District Court for the Eastern District of New York in *In re Telcar Group, Inc.*,

---

[5]    Collectively, the MK Settlement Objection and the Regions Settlement Objection are referred to as the "Settlement Objections." Morgan Keegan and Regions are collectively referred to as the "Objecting Parties."

4

363 B.R. 345 (Bankr. E.D.N.Y. 2007) and asserted that, a consideration of the facts and circumstances before this Court reveals that the "same public policy concerns that led to rejection of the settlement in Telcar are even more starkly present." MK Settlement Objection at 9. Morgan Keegan also argued that the Blevins Settlement's restrictions on disclosure of information entitled to confidential treatment under the terms of the Settlement Agreement violated Rule 3.4(f) of the South Carolina Rules of Professional Conduct ("Rule 3.4(f)"). *See id.* at 9-10. Morgan Keegan contended that the Blevins Settlement had already resulted in violations of Rule 3.4(f), and pointed to the deposition of Blevins as an example of such a violation. Morgan Keegan contended that Blevins's refusal to answer certain questions during his deposition at the direction of the Trustee's counsel blocked the MK Defendants from access to information they were legally entitled to obtain. *See id.* at 10.

In its objection, Regions reiterated the objections asserted by Morgan Keegan. *See* Regions Settlement Objection, at 5-7, ¶¶ 11-14. Regions further challenged whether the Blevins Settlement conferred any benefit to the Estate. *See* Regions Settlement Objection, at 4-5, ¶¶ 7-10.

**C. Trustee Reply**

The Trustee filed his Reply ("Reply") in response to the Settlement Objections. The Reply was supported by exhibits,[6] including the expert affidavits of Mr. Virzi ("Virzi Affidavit")[7] and Mr. Schools ("Schools Affidavit").[8]

---

[6] Filed with the Reply was correspondence between the Trustee, the Trustee's counsel, Blevins, and counsel for the MK Defendants for the period of 2014 through December of 2015 relating to the Blevins Settlement (collectively, the "Trustee's Settlement Correspondence").

[7] Mr. Virzi was offered by the Trustee to provide expert testimony and expert opinion on whether the Trustee and his counsel, Marilyn Gartley ("Gartley"), violated Rule 3.4(f) in entering into the Blevins Settlement and in asserting confidentiality, privilege or work product doctrine when objecting to questions at the Blevins Deposition, conducted on November 30, 2015 ("Blevins Deposition").

[8] Mr. Schools was offered by the Trustee as an expert witness to provide expert testimony and expert opinion on whether the Blevins Settlement evidenced a violation of 18 U.S.C. § 201.

5

At the Hearing on the Motion, on motion of the Trustee and without objection from the other parties, and after a review of their respective credentials and experience,[9] the Court qualified Schools and Virzi as expert witnesses and admitted their respective affidavits into evidence without objection pursuant to Fed. R. Evid 702. The Objecting Parties did not refute or contradict the opinions and conclusions expressed by Virzi and Schools, or otherwise submit rebuttal expert testimony or affidavits in support of their respective positions asserted in the Settlement Objections.

**D. Experts' Opinions**

In his affidavit, Mr. Virzi opined that the allegations that the conduct of the Trustee's counsel, Ms. Gartley, was "ethically improper are based on faulty application of the Rules of Professional Conduct." Virzi Affidavit, at ¶ 4. Mr. Virzi concluded that Rule 3.4(f) was "entirely inapplicable" to the Blevins Deposition (*see id.* at ¶ 6), and moreover, was not applicable to the terms and language of the Blevins Settlement itself. *See id.* at ¶ 8. Even "in the context of voluntary communications outside Blevins deposition or trial testimony, the Settlement Agreement does not violate 3.4(f)" as it "merely preserves privileged and confidential information

---

[9] Mr. Virzi teaches professional responsibility at the University of South Carolina School of Law. He is a former Assistant Disciplinary Counsel to the South Carolina Supreme Court, and has served on the South Carolina Bar's Ethics Advisory and Professional Responsibility Committees, and served as chair of the Ethics Advisory Committee.

Prior to his entry into private practice in 2013, Mr. Schools had 18-years of experience with the United States Attorney's Office, including prosecutorial experience and a tenure as the Associate Deputy Attorney General, one of the highest ranking career officials within the Department of Justice. While Associate Deputy Attorney General, he was regularly called on to evaluate whether facts presented ran afoul of the various criminal statutes. *See* Schools Affidavit, at ¶2.

and requires Blevins to give Trustee the opportunity to assert the attorney-client privilege or the work product doctrine in response to any requests for information from Blevins." *See id.* at ¶ 7.[10]

Mr. Virzi concluded that the requirement that Blevins "give Trustee's counsel an opportunity to assert a privilege, which [Gartley] is not only entitled to do but is ethically obligated to do," (*see id.* at ¶ 7) is "precisely what the Trustee or his counsel Gartley must do under a common-interest agreement in order to preserve not only the Trustee's privilege but that of others with whom the Trustee has a common interest agreement." *See id.* at ¶ 8. Virzi underscored that in exercising the Trustee's right of review prior to the Blevins Group Defendants' disclosures of requested information, "at each turn Gartley has instructed Blevins to provide the requested information" and has "caught nothing in her privilege filter, demonstrating that in both word and in deed, the [Blevins] Settlement Agreement is an ethical one." *See id.* at ¶ 7.

After reviewing the relevant settlement documents and pleadings, The Trustee's other expert, Mr. Schools concluded—to a reasonable degree of legal certainty—neither the Blevins Settlement nor the discussions that led to it evidence a violation of 18 U.S.C. § 201. *See* Schools Affidavit, at ¶4–6. First, Schools opined that if he were a federal prosecutor, the failure of the Blevins Settlement to require Blevins to testify would be fatal to any contemplated charge under 18 U.S.C. § 201(c). *See* Schools Affidavit, at ¶8. Schools then analyzed the benefits the Trustee anticipated the Estate would receive from the Blevins Settlement, as described in the Amended Settlement Notice, and concluded that "[t]hese explanations are particularly credible given the role of a Chapter 7 Trustee, who has fiduciary obligations to the Estate and who is supervised by the

---

[10] Virzi concluded that "[i]ndeed having counsel serve as the filter for information requests of a party to a common interest agreement is necessary to preserve the privilege once any privileged information has been shared." *See id.* at ¶ 7.

7

Office of the United States Trustee; when the Blevins Settlement is in writing and has been shared with the parties; and Blevins is subject to the Court's jurisdiction and could be called to testify regardless of the Blevins Settlement Agreement. *See* Schools Affidavit, at ¶ 11 (quoting Amended Settlement Notice, at 8–9).

Mr. Schools further distinguished *Telcar, supra*, opining that unlike the Blevins Group Defendants, the settling defendant in *Telcar* maintained a stake in the outcome of the litigation contingent upon the outcome of the underlying adversary proceeding. The settling defendant's reimbursement under the terms of the *Telcar* settlement was "inexorably tied to the Trustee's success in the litigation against the other defendants." *See* Schools Affidavit, at ¶ 12 (citing *In re Telcar Group, Inc.*, 363 B.R. at 354). Schools opined that although he would conclude that even the agreement in *Telcar* would not violate 18 U.S.C. § 201(c), the public policy concerns identified in *Telcar* arising from the *Telcar* witnesses having a stake in the outcome were not present in this case. *See* Schools Affidavit, at ¶ 12.

## II. CONCLUSIONS OF LAW

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334(b) and 157(a), and this is a core matter under 28 U.S.C. § 157(b)(2). Venue is proper.

### A. STANDARD

Federal Rule of Bankruptcy Procedure 9019(a) requires that, before a motion to compromise may be approved by the Court, notice of the proposed compromise must be provided to all parties having an interest in the matter, and any party having an interest in the motion to compromise must be afforded the opportunity to be heard. Fed. R. Bankr. P. 9019(a). The purpose of these requirements is to prevent the making of concealed agreements which are unknown to

8

creditors and unevaluated by the court. *See In re Smithey*, No. 10-30310, 2011 WL 3102308, at *5 (Bankr. N.D. Ohio July 25, 2011) (citing *In re Dana Corp.*, 412 B.R. 53, 58 (S.D.N.Y. 2008)).

After proper notice has been given, and parties in interest have had the opportunity to object to the proposed settlement, the Court itself must review the settlement and determine, "after apprising [itself] of all facts necessary," whether the "proposed compromise is fair and equitable. *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968). The Supreme Court has instructed bankruptcy courts engaged in making these determinations to "form an educated estimate of the complexity, expense, and likely duration of such litigation, the possible difficulties of collecting on any judgment which might be obtained, and all other factors relevant to a full and fair assessment of the wisdom of the proposed compromise." *Id.* at 424-25 (internal citation omitted). To this end, the Court:

> must weigh, and consider . . .
>
> (a) the probabilities of success in litigation;
>
> (b) the difficulties, if any, to be encountered in the matter of collection;
>
> (c) the complexity of the litigation involved (including the expense, inconvenience and delay necessarily attending the litigation); and
>
> (d) the paramount interest of the creditors and a proper deference to their reasonable views.

*In re Jakari*, Case No. 04-09182-W, 2006 WL 2612198 (Bankr. D.S.C. Jan. 20, 2006) (citing *U.S. ex Rel. Rahman v. Oncology Associates, P.C.*, 269 B.R. 139, 149 (Bankr. D. Md. 2001), *aff'd sub nom*, *U.S. ex rel. Rahman v. Colkitt*, 61 Fed. Appx. 860, 2003 WL 1735258 (4th Cir. April 2, 2003) (citing *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc.*, 390 U.S. at 424)).

"The Trustee, as proponent of the proposed settlement, has the burden of establishing that the settlement is fair and equitable and should be approved by the Court." *In re Final Analysis, Inc.*, 417 B.R. 332, 341-42 (Bankr. D. Md. 2009) (citing *In re Kay*, 223 B.R. 816, 819 (Bankr.

M.D. Fla. 1998)); *Committee v. White Plains Joint Venture* (*In re Bond*), 16 F.3d 408, 1994 WL 20107, at *3 (4th Cir. 1994). A creditor may object to a proposed compromise; however, an objection will not preclude court approval. *St. Paul Fire & Marine Ins. Co. v. Vaughn* (*In re Vaughn*), 779 F.2d 1003, 1010 (4th Cir. 1985). An objection to a settlement, "is not fatal to such a settlement if '[it] is found to be in the best interests of the estate as a whole'" *Id.* (citing *In re Flight Transp. Corp. Sec. Litig.*, 730 F.2d 1128, 1138 (8th Cir.1984), *cert. den.*, 469 U.S. 1207 (1985)). Thus, "[t]he essential inquiry that the Court must make . . . is to determine whether the settlement agreement is 'fair and equitable' and in the best interests of the estate." *In re Derivium Capital, LLC*, 380 B.R. 392, 405 (Bankr. D.S.C. 2007). (quoting *Oncology Assocs.,* 269 B.R. at 150).

**B. ANALYSIS**

In approving the Blevins Settlement, subject to the conditions set forth in this Order, the Court first notes that its approval of the Blevins Settlement does not require the Court to pre-approve the propriety of the Common Interest Agreement, nor rule on any other application of any claim of work product, privilege, or other protection. These issues will be decided by the court presiding over any challenge to any such claim at the appropriate time, on a case-by-case and claim-by-claim basis. Furthermore, the Court is not ruling on the issue of whether the Trustee was entitled to claim the work product protection at the Blevins Deposition.[11] However, because this issue was raised by the Objecting Parties as ground that prevents the Court's approval of the Blevins Settlement, the Court will address it briefly.

---

[11]    Although the Court makes no determinative findings on this issue, the public policy concerns raised by the Objecting Parties are addressed in the Virzi Affidavit, wherein Mr. Virzi opines that Trustee's counsel's claim of work product made at the Blevins Deposition was appropriate. *See* Virzi Affidavit.

10

During the November 30, 2015 Blevins Deposition taken by the MK Defendants, the Trustee's counsel instructed Blevins not to respond to certain questions based on the Trustee's assertion of privilege. After the Blevins Deposition was concluded, the Trustee did not move for a protective order nor, before the close of fact discovery, did the MK Defendants move to reopen the Blevins Deposition or otherwise move to compel Blevins to answer the questions he was directed not to answer.

Because the Trustee's assertions of privilege regarding the unanswered questions were not challenged before the close of fact discovery, they cannot now be challenged. Nor, in the Court's view, can they be used as a persuasive basis to object to the Blevins Settlement.

The Objecting Parties argued that public policy should guide the Court in reaching the conclusion that the Blevins Settlement Agreement should not be approved. Specifically, counsel for the Objecting Parties argued that if the Court approved the Blevins Settlement Agreement, it would be more likely that Blevins would skew his testimony in favor of the Trustee, would testify untruthfully, and withhold favorable testimony to their clients.

In response, the Trustee presented several factors that addressed the public policy concerns voiced by the Objecting Parties, and that provide further grounds for the Court's approval of the Blevins Settlement: (1) the cooperation required of the Blevins Group Defendants is clearly defined; (2) any breach of the Blevins Group Defendants' performance of the terms of the Covenants Not to Execute is not left to the Trustee's discretion, but instead, must be adjudged by a court of competent jurisdiction; (3) the Blevins Settlement is not shrouded in secrecy, as have been some settlements courts have been asked to approve;[12] (4) public policy supports facilitating

---

[12] One such example of a settlement agreement involving secret elements is a Mary Carter agreement, which is characterized as generally possessing the following characteristics that vary in form from agreement to agreement: (A) the agreement is kept secret from the nonsettling defendants; (B) the settling defendant remains in the case and defends itself at trial; and (C) the settlement is structured in

the cooperation between the Trustee, the FBI, and the SCAG, who each operated with limited resources and in the public's interests. In addition, any argument that the Blevins Settlement constituted a violation of Rule 3.4(f) could not be sustained in light of the Objecting Parties failure to present a witness to contradict the opinions of the Trustee's expert witnesses, who's conclusions addressed the public policy concerns raised.

Although the Court recognizes that Blevins's prior communications with the various differing parties regarding his cooperation in this proceeding fairly raised concerns by the MK Defendants and the Trustee, the Court declines to make any determinations at this time on the motivations and credibility of Blevins as a witness. The Court is firmly convinced that any determination of the credibility of a witness or of the truthfulness of a witness's testimony should be decided at trial by the ultimate finder of fact. When evaluating the Blevins Settlement, the Court cannot reach any conclusion or make any determination that any testimony Blevins might give in the future is more likely to be untruthful than truthful. The Trustee, the MK Defendants, and the other named-defendants will have their day in Court. The MK Defendants will have the opportunity, by cross-examination or other method provided for under the rules, to demonstrate any influence the Blevins Settlement may have on Blevins's testimony in the event his testimony is presented at trial.

The Court finds the arguments of the Trustee and the Trustee's experts persuasive, and concludes that the Court's approval of the Blevins Settlement does not violate public policy. The Trustee served the Blevins Settlement Notice on all parties in interest and thereby disclosed its

---

such a way as to give the settling defendant a financial incentive to assist the plaintiff in increasing the liability of the nonsettling defendant. Under both Federal and South Carolina law, Mary Carter agreements are allowed in the discretion of the presiding judge, who can exercise his discretion to require disclosure of these types of agreements to the finder of fact.

terms as required by Fed. R. Bankr. P. 9019.  The only objecting parties were the MK Defendants and Regions, which has a financial interest in opposing the recovery by the Trustee.

The Court agrees that *Telcar* is distinguishable from the facts at bar in that the Blevins Settlement does not tie the benefit to be received by the Blevins Group Defendants to the outcome of this litigation.  The Court has conducted an open and noticed hearing on the Settlement Objections, thereby addressing the concerns raised by the Objecting Parties.  Finally, the Blevins Settlement and Supporting Documents, as well as the Trustee's Settlement Correspondence, and his prior communications to the parties, are available to be used if the parties wish to call Blevins' credibility into question with the trier of fact.

The Trustee is afforded wide discretion in exercising his business judgment in analyzing the merits of a settlement he has reached, *see In re Diplomat Const., Inc.*, 454 B.R. 917, 921 (Bankr. N.D. Ga. 2011).  The Trustee testified that, after considering all applicable factors, he believed the Blevins Settlement was fair and equitable and in the best interests of the Estate and the overall litigation, as Blevins would provide valuable insider assistance to the Trustee's pursuit of the Adversary Proceeding.  The Trustee's analysis as a Chapter 7 panel Trustee for forty-two years is persuasive.  *See In re Healthco Int'l, Inc.,* 136 F.3d at 50 (explaining that in evaluating a proposed settlement pursuant to Fed. R. Bankr. P. 9019, "[t]he experience and competence of the fiduciary proposing the settlement" is also to be taken into account.").  The Objecting Parties presented no evidence to contradict the Trustee's conclusions.  Accordingly, the Court finds that the paramount interest of creditors supports approval of the Blevins Settlement.

Having reviewed the record before it, the Court concludes that the Blevins Settlement is fair and equitable, and is in the best interests of the Estate.  The Court conditions its approval of the Blevins Settlement on the following additional terms:

13

1. Notwithstanding anything in the Blevins Settlement to the contrary, if Blevins's testimony is sought by an appropriate procedure in this or related proceedings, the Trustee will have three days after written notice of the request is provided by Blevins to the Trustee, to raise objections and grounds for the same in response to the party's request. These objections and claims will be filed with and addressed by the presiding court.

2. Nothing in this Order modifies or affects any continuing disclosure requirement existing under the Federal Rules regarding discovery.

3. If any party has reasons to believe that there is false testimony or false representations at any time, including at trial, then a duty to report the same to this Court or the presiding Court arises.

### III. CONCLUSION

Settlements are to be encouraged. Having evaluated the Blevins Settlement as a whole, the Court, in the exercise of its sound discretion, concludes that approval of the Blevins Settlement is in the Estate's best interests. It appears from the Trustee's testimony that the Blevins Settlement benefits the Trustee's litigation; concerns about false testimony and unfairness are balanced by the opportunity to address those concerns at their proper place, trial; and the parties have the ability and duty to report any false testimony to this Court. Therefore, for the reasons stated above and subject to the conditions stated herein, the Blevins Settlement is approved.